**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL QUINTENZ,

    Plaintiff,

v.

BOROUGH OF TUCKERTON, *et al.*,

    Defendants.

Civil Action No. 12-cv-1970 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    Plaintiff Michael Quintenz alleges that the four Tuckerton Borough police officers involved in his April 8, 2010 arrest violated the Fourth Amendment's ban on excessive force. He asserts claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act against the officers, Tuckerton Borough Police Chief Michael Caputo, and the Borough of Tuckerton itself.

    Before the Court is a motion for summary judgment by one of the four arresting officers, Defendant Justin Cherry, who contends that undisputed evidence proves he could not have participated in his colleagues' alleged brutality. In a second summary judgment motion, Chief Caputo and the Borough of Tuckerton argue that Plaintiff has failed to establish grounds for municipal liability. Plaintiff opposed both motions, and Defendants replied. Upon careful consideration of the parties' submissions, the Court decides the motions without oral argument pursuant to Local Civil Rule 78.1.

**I.   Background**

    The parties' accounts of the events underlying this action differ substantially. The following summary adopts Plaintiff's version of the relevant facts.

Early in the morning of April 8, 2010, Tuckerton police were dispatched to Plaintiff's home in response to a 911 call from Plaintiff's wife. (Pl. Dep. 65-66.) Defendants Brian Olsen and Justin Cherry were the first officers to arrive at the house, which is set back about 100 yards from the street. (Cherry Dep. 29-30.) As the officers made their way up the long driveway towards the house, Plaintiff came off his porch to meet the officers. (Pl. Dep. 76.)

As Plaintiff approached, one of the officers ordered him to take his hands out of his pockets. (*Id.*) The officer repeated the order when Plaintiff attempted to slip a pack of cigarettes into his right pocket. (*Id.* at 80-81.) One of the officers then ordered Plaintiff to put out his cigarette and place his hands behind his back. (*Id.* at 83-86.)

Officer Olsen walked behind Plaintiff to handcuff him, while Officer Cherry positioned himself so he was facing Plaintiff. (*Id.* at 96; Olsen Dep. 23-24.) As Olsen locked Plaintiff's right wrist in the cuffs, he shoved Plaintiff forward into Cherry, causing the three men to tumble to the ground. (Pl. Dep. 88-90.) In the ensuing pile up, Cherry was pinned on his stomach under Plaintiff, who was trapped beneath Olsen. (*Id.* at 88, 96-98; Cherry Dep. 42-43.) At this point, two additional police officers, Defendants Joseph Luna and John Sanzari, arrived on the scene. As Officer Cherry frantically ordered Plaintiff off his back and Plaintiff struggled to comply, Officers Olsen, Luna, and Sanzari struck Plaintiff repeatedly in the face and torso. (Pl. Dep. 98-99, 114; Luna Dep. 30.)

Following the struggle, Plaintiff was charged with resisting arrest (N.J.S.A. § 2C:29-2a) and aggravated assault on a law enforcement officer (N.J.S.A. § 2C:12-1b(5)(a)). Both felony charges were subsequently dropped and Plaintiff pled guilty to a disorderly persons offense. (Pl. Dep. 91-92.) At the plea hearing, Plaintiff admitted to the following conduct as the basis for his plea:

> **Question:** Directing your attention to April 10[th], 2010 [sic.] ... you were [home] on that particular date[?]
>
> **Plaintiff:** Yes, sir.
>
> **Question:** And for some reason the police arrived under a mistaken understanding there was some sort of domestic violence situation at your house, correct?
>
> **Plaintiff:** Yes, sir.
>
> **Question:** And in the course of them approaching you, they made some orders and some other comments toward you, correct?
>
> **Plaintiff:** Yes.
>
> **Question:** And at some point in time you were wrestled to the ground, correct?
>
> **Plaintiff:** Yes.
>
> **Question:** And at that time you were struggling and interfering with their ability to handcuff you and place you under arrest, correct?
>
> **Plaintiff:** Yes.

(Plea Hearing Tr., ECF No. 27-10, 8-9.)

## II. **Summary Judgment Standard**

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More

precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the non-moving party. *Id.* at 249-50. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

### III. Analysis

#### A. Officer Cherry's Motion

The constitutional inquiry into a police officer's use of force to apprehend or subdue a free citizen centers on "reasonableness." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Fourth Amendment demands that officers use no more force than is "objectively reasonable in light of the facts and circumstances" confronting the officer at the time. *Id.*

No reasonable fact finder could conclude that Officer Cherry's conduct violated this standard because he took no part in the violence underlying Plaintiff's claims. *See Malignaggi v. Cnty. of Gloucester*, 855 F. Supp. 74, 81 (D.N.J. 1994) (dismissing claims against officers who played no "'affirmative part' in the conduct which violated plaintiff's civil rights") (quoting *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986)). As Plaintiff himself admitted at his deposition, Officer Cherry could not have participated in the beating because he was lying face down in the driveway when it occurred. (Pl. Dep. 115.)

Nor may the claims against Officer Cherry proceed on a failure to intervene theory. An officer's duty to prevent a colleague from using excessive force arises when the officer knows of his colleague's conduct, and has a realistic and reasonable opportunity to stop it. *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002). The evidence here establishes that Cherry could not see the struggle that was going on behind him. Certainly, he was in no position to

evaluate the propriety of his colleagues' conduct. As such, he had no duty to intervene on Plaintiff's behalf.

Based on the foregoing, Officer Cherry's motion for summary judgment must be granted.

### C.   The Borough's Motion

Local governments are not subject to *respondeat superior* liability in civil rights cases. *See Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 694-95 (1978). To sustain a civil rights claim against a municipality, the plaintiff must prove that his injury resulted directly from a municipal policy or custom. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Where, as in this case, municipal liability is premised on an unofficial custom, the plaintiff must "produce facts tending to show the [municipality] knew of a pattern of constitutional violations or that such consequences were so obvious the [municipality's] conduct can only be characterized as deliberate indifference." *Pelzer v. City of Phila.*, 656 F. Supp. 2d 517, 533 (E.D. Pa. 2009).

In *Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996), the Third Circuit held that Pittsburgh could be liable for the brutality of a police officer whose conduct generated "five complaints of excessive use of force in less than five years." *Id.* at 972. *Beck* explained that the police chief's failure to respond to this "pattern of violent and inappropriate behavior" supported an inference that the city embraced a "custom of acquiescing in the excessive use of force by its police officers." *Id.* at 972-74. Plaintiff contends that the evidence in this case supports a similar inference with respect to Tuckerton Borough.

According to Plaintiff, Officer Luna's record of misconduct is comparable to that of the chronically violent officer in *Beck*. (Pl. Opp'n, ECF No. 33, 16.) Plaintiff points to two pieces of evidence to support this position. The first is an excessive force complaint that Officer Luna received in 2007 or 2008. (Luna Dep. 17-18.) This appears to be the only complaint of this kind

5

against Officer Luna. The second is Officer Luna's account of a violent altercation with a hit-and-run motorist during a visit to New Orleans in September 2009. Luna admitted striking the motorist, who had run into Luna's wife as she crossed Bourbon Street.[1] (Luna Dep. 15.)

Officer Luna's past conduct falls far short of suggesting the sort of "pattern" necessary to demonstrate a municipality's tacit approval of police brutality. *Beck*, 89 F.3d at 972. The officer in *Beck* generated five excessive force complaints in five years; Officer Luna has had only one. This lone complaint, considered together with the off-duty incident in New Orleans, simply does not reflect a "settled practice of applying excessive force in arresting citizens." *Id.*; *cf. Worrall v. City of Atl. City*, No. 11-3750, 2013 WL 4500583, at *3-4 (D.N.J. Aug. 30, 2013) (evidence supporting municipal liability for excessive force "teeter[ed] on the border of insufficiency" where plaintiff demonstrated that arresting officer had received 15 brutality complaints in less than three years).

Based on the evidence before the Court, no rational fact finder could conclude that Tuckerton Borough was deliberately indifferent to the Fourth Amendment rights of arrestees. The Borough is therefore entitled to summary judgment.

### D. Chief Caputo's Motion

Plaintiff's claim against Chief Caputo in his official capacity as head of the Tuckerton Police Department fails for the same reasons discussed in the preceding section. *See Cordial v. Atl. City*, No. 11-1457, 2014 WL 1095584, at *9 (D.N.J. March 19, 2014) (explaining that a "suit against the Chief of Police in his official capacity is really a claim against the police department

---

[1] Plaintiff also asserts that Officer Luna was named in two lawsuits before he joined the Tuckerton Borough police force, but fails to present evidence regarding the nature of the suits, or Officer Luna's role in the events that precipitated them. The Court will not speculate as to the significance of this evidence. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (party opposing summary judgment must "designate specific facts showing that there is a genuine issue for trial") (internal quotation marks omitted).

and, in turn, the municipality"). Insofar as Plaintiff asserts a claim against Chief Caputo in his individual capacity, it fails because there is no evidence that Chief Caputo was involved in Plaintiff's arrest. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 129 & n.5 (3d Cir. 2010) (supervisor may be held liable for civil rights violation when he "'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'") (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Accordingly, Chief Caputo is also entitled to summary judgment.

## IV. Conclusion

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendants' motions are granted. Plaintiff's claims against Defendants Justin Cherry, the Borough of Tuckerton, and Michael Caputo are dismissed with prejudice.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: May 29th, 2014